1  NATALIE A. PIERCE, Bar No. 191342
   ANDREA R. MILANO, Bar No. 278937
2  LITTLER MENDELSON, P.C.
   650 California Street, 20th Floor
3  San Francisco, CA  94108-2693
   Telephone: (415) 433-1940
4  Facsimile: (415) 399-8490
   Email: npierce@littler.com
5          amilano@littler.com

6  Attorneys for Defendant
   ALEXION PHARMACEUTICALS, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  VICTORIA WARREN,                    CASE NO.

12              Plaintiff,              **DEFENDANT'S NOTICE OF REMOVAL
                                        TO FEDERAL COURT**
13       vs.

14  ALEXION PHARMACEUTICALS, INC.;
    and DOES 1 through 25, inclusive,
15
                Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

Firmwide:127300456.1 069791.1005

CASE NO.                              DEFENDANT'S NOTICE OF REMOVAL

1   TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF VICTORIA

2   WARREN AND HER ATTORNEYS OF RECORD:

3           PLEASE TAKE NOTICE that Defendant ALEXION PHARMACEUTICALS. INC.,

4   ("Defendant") hereby removes the above-entitled action from the Superior Court of the State of

5   California, County of Alameda, to the United States District Court for the Northern District of

6   California, pursuant to 28 U.S.C. §§ 1332(a), 1441(b), and 1446.

7                       **STATEMENT OF JURISDICTION**

8           1.      This Court has original jurisdiction over this action under the diversity of

9   citizenship statute. 28 U.S.C. § 1332(a).  In relevant part, the diversity statute grants district courts

10  original jurisdiction over civil actions where the matter in controversy exceeds the sum of value of

11  $75,000, exclusive of interest and costs, and is between citizens of different states.  As set forth

12  below, this case meets all of the diversity statute's requirements for removal and is timely and

13  properly removed by the filing of this Notice.

14                    **PLEADINGS, PROCESS, AND ORDERS**

15          2.      On May 27, 2014, Plaintiff Victoria Warren ("Plaintiff") filed a Complaint for

16  Damages ("Complaint") against Defendant and various Doe defendants in Alameda County Superior

17  Court entitled *Victoria Warren v. Alexion Pharmaceuticals, Inc. and DOES 1-25, inclusive,* Case

18  No. RG14726780.  The Complaint asserts the following six causes of action:  (1) sex discrimination

19  in violation of FEHA; (2) retaliation in violation of FEHA; (3) wrongful termination in violation of

20  public policy; (4) breach of implied covenant of good faith and fair dealing; (5) invasion of privacy –

21  California Constitution; and (6) common law invasion of privacy.

22          3.      On May 29, 2014, Plaintiff served on Defendant, through Defendant's agent

23  for service of process: (1) the Summons and Complaint, (2) a Civil Case Cover Sheet, and (3) an

24  ADR Information Packet.  True and correct copies of these documents, including exhibits, are

25  attached hereto as **Exhibit A**.

26          4.      On June 11, 2014, Defendant filed and served its Answer to Plaintiff's

27  unverified Complaint in the Superior Court of the State of California for the County of Alameda.  A

28  true and correct copy of Defendant's Answer is attached hereto as **Exhibit B**.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300456.1 069791.1005

CASE NO.                                              DEFENDANT'S NOTICE OF REMOVAL

1        5.      Pursuant to 28 U.S.C. § 1446(d), the attached exhibits constitute all process,

2  pleadings, and orders served on Defendant or filed or received by Defendant in this action.

3  <div align="center">**TIMELINESS OF REMOVAL**</div>

4        6.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed as it is

5  filed within thirty (30) days of May 29, 2014, the date of service of the Summons and Complaint,

6  and within one year from the commencement of this action.

7  <div align="center">**DIVERSITY JURISDICTION**</div>

8        7.      The diversity of citizenship statute, 28 U.S.C. § 1332(a), provides in relevant

9  part: "The district courts shall have original jurisdiction of all civil actions where the matter in

10  controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

11  (1) citizens of different States[.]"

12        8.      This action is a civil action over which this Court has original jurisdiction

13  based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), and is one which may be removed

14  to this Court by Defendant pursuant to 28 U.S.C. § 1441(b) because it is a civil action between

15  citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and

16  costs, as set forth below.

17  <div align="center">**DIVERSITY OF CITIZENSHIP**</div>

18        9.      For diversity purposes, a person is a "citizen" of the State in which he or she

19  is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's

20  domicile is the place he or she resides with the intention to remain, or to which he or she intends to

21  return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that at

22  all times mentioned in the Complaint, Plaintiff was and is a resident of the State of California in the

23  County of Alameda, and is therefore a citizen of the State of California in the County of Alameda.

24  (Exhibit A, Complaint, ¶ 2.) *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can

25  create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm*

26  *Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court

27  complaint of residency "created a presumption of continuing residence in [state] and put the burden

28  of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300456.1 069791.1005    2.

CASE NO.                       DEFENDANT'S NOTICE OF REMOVAL

1  *v. Simmons*, 2008 U.S. Dist. LEXIS 21162, \*22 (E.D. Cal. 2008) (place of residence provides "prima

2  facie" case of domicile).

3      10.    For diversity jurisdiction purposes, a corporation is deemed a citizen of its

4  state of incorporation and the state where it has its principal place of business. 28 U.S.C. §

5  1332(c)(1). Here, Defendant is a citizen of Delaware, where it is incorporated, and a citizen of

6  Connecticut, where it has its principal place of business. (*See* Declaration of Devjani Mishra in

7  Support of Defendant's Notice of Removal of Action ("Mishra Decl."), ¶¶ 2-3; Compl. ¶ 2.)

8      11.    For purposes of removal, the "nerve center" test should be applied to

9  determine a corporation's principal place of business. *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192-

10  93 (2010). Under the "nerve center" test, the principal place of business is "where a corporation's

11  officers direct, control, and coordinate the corporation's activities." *Id*. at 1192. Defendant's

12  corporate offices and global headquarters, which house the company's executive and administrative

13  functions, are located in Cheshire, Connecticut. (Mishra Decl., ¶ 3.) Thus, Defendant's principal

14  place of business is located in the state of Connecticut, and Defendant is a citizen of Connecticut for

15  diversity purposes.

16      12.    Defendant is not a citizen of the State of California, where this action is

17  currently pending, and thus there is complete diversity between the parties because they are citizens

18  of different states. *See* U.S.C. § 1332(a).

19      13.    The presence of Doe defendants in this case has no bearing on diversity with

20  respect to removal. 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the

21  citizenship of defendants sued under fictitious names shall be disregarded").

22          **AMOUNT IN CONTROVERSY**

23      14.    The Complaint does not indicate an amount of damages claimed; thus,

24  Defendant only needs to show by a preponderance of the evidence (that it is more probable than not)

25  that Plaintiff's claimed damages exceed the jurisdictional minimum. *Sanchez v. Monumental Life*

26  *Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996). Here, the Court can reasonably ascertain from

27  Plaintiff's Complaint and her prayer for relief that the amount in controversy exceeds $75,000.

28      15.    Plaintiff seeks recovery of back pay, front pay, loss of earnings, retirement

Firmwide:127300456.1 069791.1005                    3.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

CASE NO.                                    DEFENDANT'S NOTICE OF REMOVAL

1    earnings, medical and health benefits, other lost employee benefits, recovery for mental and

2    emotional distress, general damages, punitive damages, and attorneys' fees. (Compl., ¶¶ 54-60 and

3    Prayer for Relief.)  Plaintiff filed this case in state court as an unlimited jurisdiction matter and

4    alleges that the amount in controversy exceeds $25,000. (Compl., ¶ 5.)

5              16.    Defendant employed Plaintiff as a sales representative. (Mishra Decl. ¶ 4; *see*

6    *also* Compl., ¶ 9.)  Plaintiff's employment with Defendant was terminated in August 2012. (Mishra

7    Decl. ¶ 4.)  Plaintiff's annual salary at the time of her termination, <u>not</u> including incentive pay,

8    allowances, and other benefits, amounted to approximately $129,302.64.   (Mishra Decl., ¶ 4.)

9    Although Defendant denies Plaintiff is entitled to recover any damages, assuming, *arguendo*, that

10   Plaintiff was awarded back wages for approximately three years (from the date of termination to the

11   likely date of trial at least one year from now), the amount of back pay in controversy in this case

12   would total at least $387,000.  In addition, to the extent Plaintiff seeks future damages or front pay

13   as a result of the alleged wrongs by Defendant, such awards in California often span several years.

14   *See Smith v. Brown-Forman Distillers Corp.*, 196 Cal.App.3d 503, 518 (1989) (front pay until

15   mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus.*, 55 Cal. App. 3d 91, 92 (1976)

16   (four years); *Drzewiecki v. H & R Block, Inc.*, 24 Cal.App.3d 695, 705 (1972) (ten years).  Even

17   conservatively estimating that Plaintiff seeks front pay damages for only two years, the amount of

18   future wages in controversy in this case would total at least an additional $250,000.  Thus, it may

19   reasonably be estimated that Plaintiff's claims involve possible back pay and front pay damages

20   which alone total in excess of $646,000.

21             17.    When authorized by statute, attorney's fees are to be included in the

22   calculation of the amount of Plaintiff's claims for purposes of determining whether the requisite

23   jurisdictional minimum is met.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)

24   (holding that where an underlying statute authorizes an award of attorneys' fees, such fees may be

25   included in the amount in controversy); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004,

26   1010-11 (N.D. Cal. 2002) (in deciding amount in controversy issue, court may estimate the amount

27   of reasonable attorney's fees like to be recovered by plaintiff if she were to prevail).  Plaintiff's first

28   and second causes of action for discrimination under the California Fair Employment and Housing

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300456.1 069791.1005          4.

1    Act (FEHA) provide for recover of attorney's fees and plaintiff specifically seeks recovery of
2    attorney's fees. (Complaint, Prayer for Relief.) Section 12965(b) of the Government Code provides
3    that, in actions brought under the FEHA, "the court, in its discretion, may award to the prevailing
4    party reasonable attorney's fees and costs[.]" Although Plaintiff's attorney's fees cannot be
5    precisely calculated, it is reasonable to assume that they could exceed a damages award. *Simmons v.*
6    *PCR Technology,* 209 F.Supp.2d 1029, 1035 (N.D. Cal 2002). A defendant may use damage awards
7    in other cases to establish the amount in controversy. *Id.* at 1033. Attorneys' fees awards in FEHA
8    cases can be sizeable. *See, e.g., Beaty v. BET Holdings, Inc.,* 222 F.3d 607 (9th Cir. 2000)
9    (recognizing that award of attorney's fees of \$376,520 may be appropriate in FEHA where
10   compensatory damages were only \$30,000, but remanding to district court to clarify whether court
11   had properly exercised its discretion to consider reducing the fee award). Other California courts
12   have upheld large attorney's fee awards in FEHA cases. *See Flannery v. Prentice,* 26 Cal.4th 572
13   (2001) (affirming award of attorney's fees and costs of \$891,042); *Mangold v. California Public*
14   *Utilities Comm'n,* 67 F.3d 1470 (9th Cir. 1995) (affirming \$724,380 attorney's fee award in FEHA
15   and ADEA case where plaintiffs' damages awards were significantly less). Thus, Plaintiff's demand
16   for attorneys' fees further increases the amount in controversy.

17          18.     Plaintiff also seeks punitive damages. (Complaint, ¶¶ 54-56, 60, Prayer for
18   Relief.) The Court must take into account punitive damages for purposes of determining the amount
19   in controversy where such damages are recoverable under state law. *Davenport v. Mutual Benefit*
20   *Health and Accident Ass'n,* 325 F.2d 785, 787 (9th Cir. 1963); *Brady v. Mercedes-Benz USA, Inc.,*
21   243 F.Supp.2d 1004, 1009 (N.D. Cal. 2002). California law does not provide any specific monetary
22   limit on the amount of punitive damages that may be awarded under Civil Code section 3294.
23   Factors to consider in determining the proper amount of punitive damages include:  (1) the
24   reprehensibility of the defendant's misconduct, (2) the ratio between compensatory and punitive
25   damages, (3) and the ratio between damages and defendant's net worth.  *Boyle v. Lorimar*
26   *Productions, Inc.,* 13 F.3d 1357, 1360 (9th Cir. 1994). In *Aucina v. Amoco Oil, Co.,* 871 F.Supp.
27   332 (S.D. Iowa 1994), the defendant employer established that the amount in controversy exceeded
28   the jurisdictional minimum in a discrimination and wrongful discharge lawsuit where the former

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

Firmwide:127300456.1 069791.1005          5.

CASE NO.                                          DEFENDANT'S NOTICE OF REMOVAL

1    employee asserted claims for lost wages, lost benefits, mental anguish, and punitive damages. The

2    court noted that "[b]ecause the purpose of punitive damages is to capture a defendant's attention and

3    deter others from similar conduct," the plaintiff's claim for punitive damages "might alone" exceed

4    the jurisdictional minimum. *Id.* at 334.   Although Defendant vigorously denies Plaintiff's

5    allegations, if Plaintiff were to prevail on her punitive damages claim, that claim alone could exceed

6    the jurisdictional minimum.

7         19.   In sum, although Defendant does not concede Plaintiff's claims have any

8    merit, when the relief sought by Plaintiff is taken as a whole, the amount in controversy for

9    Plaintiff's claims more likely than not exceeds the $75,000 jurisdiction requirement, exclusive of

10   interest and costs. Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in

11   this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a).

12        20.   For these reasons, this action is a civil action over which this Court has

13   original jurisdiction pursuant to Section 1332, and which may be removed by Defendant to this

14   Court pursuant to 28 U.S.C. section 1441 based on diversity jurisdiction.

15                                    **VENUE**

16        21.   Venue lies in the Northern District of California pursuant to 28 U.S.C. §§

17   84(c), 1441(a), and 1446(a). Plaintiff originally brought this action in the Superior Court of the State

18   of California, County of Alameda.  Pursuant to Northern District Local Rule 3-2(d), the appropriate

19   assignment of this action is to either the San Francisco Division or Oakland Division of this Court.

20                              **NOTICE OF REMOVAL**

21        22.   Contemporaneously with the filing of this Notice of Removal in the United

22   States District Court for the Northern District of California, the undersigned is providing written

23   notice of such filing to Plaintiff's counsel of record. In addition, a copy of this Notice of Removal

24   will be filed with the Clerk of the Superior Court of the State of California, County of Alameda.

25   ///

26   ///

27   ///

28   ///

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300456.1 069791.1005                6.

CASE NO.                                     DEFENDANT'S NOTICE OF REMOVAL

1    WHEREFORE, Defendant prays that the Court remove this civil action from the

2    Superior Court of the State of California, County of Alameda, to the United States District Court for

3    the Northern District of California.

4    DATED: June 12, 2014

5                                                    */s/ Natalie A. Pierce*
                                                     NATALIE A. PIERCE
6                                                    ANDREA R. MILANO
                                                     LITTLER MENDELSON, P.C.
7
                                                     Attorneys for Defendant
8                                                    ALEXION PHARMACEUTICALS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300456.1 069791.1005                          7.

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

NOTICE TO DEFENDANT: ALEXION PHARMACEUTICALS, INC.;
(AVISO AL DEMANDADO): and DOES 1 through 25, inclusive,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

MAY 27 2014

CLERK OF THE SUPERIOR COURT

By _____
                                    Deputy

YOU ARE BEING SUED BY PLAINTIFF: VICTORIA WARREN
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
Alameda County Superior Court
1221 Oak Street
Oakland CA 94612

CASE NUMBER:
(Número del Caso): R G 1 4 7 2 6 7 8 0

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Jason Erlich, Esq., Cal Bar. #203661         415-296-8420
McCormack & Erlich, LLP
150 Post Street, Suite 742
San Francisco, CA 94108

DATE:                          Leah T. Wilson    Clerk, by _____, Deputy
(Fecha)   MAY 2 7 2014         (Secretario)                               (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): ALEXION PHARMACEUTICALS, INC.

under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

*12653690*

Jason M. Erlich, Esq., Cal. Bar #203661
  Email: *jason@mcelawfirm.com*
MCCORMACK & ERLICH, LLP
150 Post Street, Suite 742
San Francisco, CA 94108
Tel: (415) 296-8420
Fax: (415) 296-8552

Attorney for Plaintiff Victoria Warren

**FILED**
ALAMEDA COUNTY

MAY 2 7 2014

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

CIVIL - UNLIMITED JURISDICTION

| | |
|---|---|
| VICTORIA WARREN,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXION PHARMACEUTICALS, INC.;<br>and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.  RG 14726780<br><br>**COMPLAINT FOR DAMAGES**<br><br>(1) SEX DISCRIMINATION IN VIOLATION OF FEHA<br>(2) RETALIATION IN VIOLATION OF FEHA<br>(3) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br>(4) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>(5) INVASION OF PRIVACY – CAL. CONSTITUTION<br>(6) COMMON LAW INVASION OF PRIVACY |

Plaintiff Victoria Warren ("plaintiff" or "Warren") complains against each defendant, demands a trial by jury of all issues, and for causes of action alleges:

**PARTIES**

1.      Plaintiff is informed and believes and on that basis alleges that defendant Alexion Pharmaceuticals, Inc. (hereafter "Alexion" or "Defendant") is a registered Delaware corporation doing business in the State of California. At all times relevant to this complaint, Alexion was and is an "employer" as that term is defined by Cal. Gov. Code § 12926(d).

2.      At all times relevant to this complaint, Plaintiff is and was a resident of the State of California. At all times relevant to this complaint, Warren was employed by Alexion and was therefore an "employee" as that term is defined by Cal. Gov. Code § 12926(c).

3.      Warren sues fictitious defendants DOES 1 through 25 under Code of Civil Procedure § 474 because the true names and capacities of such DOE defendants are not presently known to her.

- 1 -

COMPLAINT FOR DAMAGES

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

BY FAX

1  Warren will amend this complaint to allege the true names and capacities of DOE defendants when

2  the true names of such DOE defendants are determined. Warren is informed and believes that each of

3  the DOE defendants was responsible in some way for the occurrences and injuries alleged in this

4  complaint.

5      4.    Warren is informed and believes that in doing the things alleged in this complaint,

6  each defendant was acting as an agent or employee of every other defendant, was acting within the

7  course and scope of this agency or employment, and was acting with the consent, permission, and

8  authorization of each of the remaining defendants. Warren is also informed and believes that all

9  actions of each defendant alleged in this complaint were ratified and approved by the officers or

10  managing agents of every other defendant.

11                      **JURISDICTION AND VENUE**

12      5.    This Court has subject matter jurisdiction as the amount in controversy exceeds

13  $25,000. This Court has personal jurisdiction over the Defendants arising from their contacts with

14  California pursuant to Code of Civil Procedure § 410.10.

15      6.    Venue is proper in Alameda County Superior Court under Code of Civil Procedure §

16  395.5 as the events that gave rise to this action occurred within the State of California.

17                    **ADMINISTRATIVE PROCEEDINGS**

18      7.    Warren filed with the Department of Fair Employment and Housing ("DFEH") a

19  Complaint of Discrimination under the provisions of FEHA against Alexion and the other defendants

20  named herein, alleging that she suffered unlawful discrimination as more fully set forth in this

21  Complaint.

22      8.    The DFEH issued a Notice of Case Closure and Right-to-Sue letter to Warren

23  authorizing her to file a private law suit against Alexion and the other defendants named herein in

24  order to enforce her rights to full and equal employment opportunities free from unlawful

25  discrimination. Warren has exhausted all administrative remedies required by FEHA as a

26  prerequisite to filing this action.

27

28

- 2 -

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

## FACTUAL ALLEGATIONS COMMON TO MORE THAN ONE CAUSE OF ACTION

9.    Plaintiff Victoria Warren was hired in approximately November 2008 by Alexion, a biopharmaceutical company, as a sales representative. Warren's job duties included sales and promotion of Alexion's only marketed pharmaceutical product, a biotech drug with the brand name Soliris. Warren's job duties took her to multiple hospitals, clinics and doctor's offices to promote, educate and sell doctors and other health care providers on the benefits of Soliris. Within Warren's territory, which covered the nine San Francisco Bay Area Counties, Santa Cruz, and Monterrey, California, she called on well over forty hospitals and private medical practices.

10.    Biotechnology drug reps are typically at the top of their field, are well-compensated, and have considerable medical knowledge of the drugs they promote and conditions those drugs treat. Biotech drugs are typically very expensive, and treat serious, often rare medical conditions that are otherwise unmet by other, less costly, more traditional therapies. Far from merely handing out promotional materials or "schmoozing" doctors, biotech drug reps are often relied upon by physicians and their medical staff as a valuable resource for education on the latest developments and clinical research on their cutting-edge therapies, and for education about rare and complex disease that physicians may rarely ever encounter.

11.    At the time Warren started work with Alexion in 2008, Soliris had received FDA approval for treatment of only one indication, a rare blood disease called Paroxysmal Nocturnal Hemoglobinuria (PNH), in which the human body's immune system destroys red blood cells, leading to life-threatening complications; approximately half of PNH patients die from the disease within 10 to 15 years of diagnosis. Soliris became FDA-approved for PNH in March of 2007.

12.    Upon information and belief, PNH is an extremely rare disease, with incidence of less than 12 to 15 cases per one million of the population; only around 8,000 patients are diagnosed with PNH in total. Upon information and belief, based on the list price for Soliris, a single patient is worth approximately $400,000 to $700,000 in revenues each year to Alexion. Forbes magazine ran a story in 2010 naming Soliris as "the world's single most expensive drug." Essentially all of Alexion's revenue is derived from sales of Soliris, and Alexion states that it expects Soliris will continue to provide most of the company's revenue for the next several years.

- 3 -

13.     As Alexion has no other near-term sources of revenue, the company's only option to achieve its aggressive revenue and earnings growth targets is to seek out new patients for Soliris. At the same time it is critical for Alexion to keep every existing patient on the drug, since loss of a single patient means loss of $400,000 to $700,000 per year in sales. Intense pressure on Alexion management from its investors and the Wall Street analyst community to achieve high sales growth translates directly into pressure from the management onto its sales reps to do everything possible to find new patients and keep current patients taking Soliris. At times this management pressure can cross ethical and legal boundaries in regard to drug promotion and patient privacy.

14.     On several occasions, Warren was encouraged by Alexion managers to influence doctors to keep patients on Soliris who had conclusively tested negative for PNH. Despite that these patients did not present with any diagnosis that Soliris was FDA-approved to treat, the company requested Warren intervene with clinicians to keep these patients taking Soliris, thus maintaining critical revenue streams to the company.

15.     For example, in approximately 2010, a patient presented to an Oakland Oncologist, with symptoms possibly indicating a diagnosis of PNH. Oncologists typically treat solid tumors, not blood disorders like PNH, so this Oncologist relied on Warren as a resource for education about this rare disease and its treatment options. The Oncologist chose to test the patient through Quest Diagnostics, a testing service known by Alexion to produce occasional false positives for PNH. The Quest lab results were ambiguous but could be interpreted to indicate a diagnosis of PNH. Warren recommended a second set of tests using a different lab, Dahl-Chase, which was considered to be the 'gold-standard' in accurate PNH testing. The Dahl-Chase test came back negative for PNH. However, Warren's manager encouraged her to downplay the significance of the Dahl-Chase test with the local oncologist and encourage him to put the patient on Soliris on the basis of the likely faulty Quest diagnostic. As a result, the patient was kept on Soliris for approximately another two years, at a cost to the U.S. healthcare system in the area of $800,000 - $1.4 million. In 2012, the patient developed health problems that resulted in hospitalization at UCSF Medical Center. The UCSF doctor, a specialist in rare hematologic disorders such as PNH, ordered a third set of tests from the Mayo Clinic that confirmed the patient did not have PNH, and then took the patient off Soliris.

- 4 -

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1    Despite now having two conclusive negative tests, an Alexion case manager nonetheless emailed

2    Warren asking her to intervene with the patient's Oakland Oncologist to try to convince him to put

3    the patient on Soliris again. In a meeting with her direct supervisor Warren expressed discomfort

4    with this request and refused to take any steps to get the patient put back on Soliris.

5         16.    Alexion management also were aware, encouraged and ratified drug reps such as

6    Warren to gain access to confidential patient medical records in order identify patients with

7    symptoms of PNH. Alexion provided drug reps with pre-printed post-it notes that read "test for

8    PNH," to be placed in patient medical records. With knowledge and approval from Alexion

9    management, reps obtained confidential patient medical records from clinicians and their staffs,

10   which included patient initials or full names, dates of birth, and other identifying information in

11   violation of the privacy and security rules of the Health Insurance Portability and Accountability Act

12   of 1996 (HIPAA). Alexion management were at all times aware of the practice, and further

13   encouraged and expected its drug reps to discuss potential PNH patients by name with physicians and

14   encourage testing and placement of the patients on treatment with Soliris. One Alexion drug rep

15   known to Warren even went so far as to arrange to personally drive a Soliris patient, who had

16   difficulty with transportation, to the doctor on a regular basis so the patient could continue to receive

17   costly Soliris infusions. In addition, Warren was encouraged by her manager and Alexion senior

18   management on one occasion to leave a work meeting in Southern California in order to fly home

19   early and meet with a patient and her husband at their home to discuss Soliris treatment. However in

20   nearly all cases, patients were completely unaware that Alexion drug reps were reviewing their

21   medical records and providing input on their treatment without their knowledge or approval.

22        17.    On September 23, 2011, Alexion received FDA approval for Soliris to treat a second

23   condition, known as Atypical Hemolytic Uremic Syndome (aHUS), an immune disorder mainly

24   affecting kidney function, which is believed to affect only a few hundred patients in the United

25   States. Six months before the FDA had approved Soliris for aHUS, Alexion instructed its drug reps,

26   including Warren, to deliver to physicians known to be, "currently treating/managing patients that

27   have been diagnosed with aHUS and or TTP [a condition often mistaken for aHUS]" an offer to

28   participate in a market research survey. Alexion mailed the survey to its drug reps in sealed white

- 5 -

McCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1   envelopes with the doctor's name, containing a $100 rewards ATM card for the doctor, and instructed

2   the reps to personally deliver the envelopes to their physicians.  This survey requested the physicians

3   to provide data on the number of aHUS patients they treated, and to identify any other physicians to

4   whom aHUS cases were referred.  Physicians were paid $100 to fill in the one-page, approximately

5   five question survey, which had no clinical or research purpose, but was clearly extremely valuable in

6   developing a list of physicians to target for Alexion's sales and marketing efforts once the aHUS

7   indication launched.  A few weeks later, Alexion decided that having its drug reps deliver the survey

8   was not compliant with regulations governing off-label promotion, and instructed its reps to mail the

9   survey envelopes back; however some of the envelopes had already been delivered to the intended

10  physicians by that time.

11         18.     In July of 2011, approximately three months before the FDA's ultimate approval of

12  Soliris for aHUS, Alexion management forwarded its drug reps, including Warren, a one page

13  information sheet to provide to all of their hematology/oncology physicians.  This sheet included

14  further questions regarding the as yet unapproved aHUS indication, including the numbers of TTP vs.

15  aHUS patients treated, names of clinicians who treated them, and related information.  Alexion

16  required their drug reps to fax this survey back to senior company management on a weekly basis.

17         19.     In approximately early 2011, Warren began a personal relationship with a Stanford

18  doctor, Dr. Holbrook Kohrt, a hematologist who specializes in the treatment of Lymphoma.  Kohrt

19  was one of the physicians Warren called upon to detail Soliris.  However, Warren's personal

20  relationship with Dr. Kohrt was unrelated to her job duties with Alexion, and was merely a matter of

21  two people who worked together becoming romantically involved.

22         20.     Sometime in late August 2012, Warren was confronted by Alexion's managers and

23  lawyers about her relationship with Dr. Kohrt.  Warren was told nothing of the investigation into her

24  personal life and communications with Dr. Kohrt.  Warren fully cooperated with Alexion's managers

25  and lawyers, yet nonetheless was suspended on August 21 with no explanation as to the basis of her

26  suspension.

27         21.     On August 31, 2012, Warren met with Keith Woods, National Sales Director, and

28  Devjani Mishra, legal counsel for Alexion.  Warren was told that she was being terminated for having

- 6 -

150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
McCORMACK & ERLICH, LLP
TELEPHONE: (415) 296-8420

1  "off label discussions" about Alexion's drugs and because allegedly Stanford had revoked her

2  privileges to access their medical facilities. No other reasons were given for her termination.

3      22.      Warren alleges, upon information and belief, that the reasons for her termination as

4  given by Alexion were pretextual and false. Warren alleges that she never conducted any off label

5  discussions during her tenure with Alexion. Warren further alleges that any discussions regarding

6  Alexion's drug and/or diagnoses for which that drug had not received FDA-approval were at the

7  behest and encouragement of her supervisors, managers, and superiors at Alexion.

8      23.      During the August 31 meeting, Warren asked Mr. Woods if she could review copies of

9  the communications which alleged showed that she had "off label discussions." Mr. Woods refused

10  to provide copies of these alleged communications.

11      24.      Additionally, Warren is informed and believes and on that basis alleges that Stanford

12  never revoked her privileges to access Stanford's facilities, and that this alleged reason was false,

13  pretextual and designed to hide Alexion's true reasons for terminating her employment. Furthermore,

14  Warren is informed and believes and on that basis alleges that Stanford conducted a thorough

15  investigation into the conduct of Dr. Kohrt, based on accusations discussed with them by Alexion

16  including that Dr. Kohrt participated in providing confidential patient information to Warren. Warren

17  is informed and believes and on that basis alleges that upon completion of that investigation Stanford

18  took no disciplinary action against Dr. Kohrt.

19

20  <center>**First Cause of Action**
**SEX OR GENDER DISCRIMINATION**</center>

21  <center>**IN VIOLATION OF THE FAIR EMPLOYMENT & HOUSING ACT**
**Cal. Gov. Code § 12940(a)**</center>

22  <center>**Against All Defendants**</center>

23      As a first, separate and distinct cause of action, Warren complains against all defendants and

24  for a cause of action alleges:

25      25.      Warren re-alleges each and every allegation contained in paragraphs 1 through 24 of

26  this complaint as if each allegation was fully set forth herein.

27      26.      Government Code § 12940(a) makes it an unlawful employment practice for an

28  employer to discriminate against an employee in terms, conditions, or privileges of employment

<center>- 7 -</center>

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1    because of the employee's sex or gender.

2    27.    At all times herein, Warren was female individual, was fully qualified and competent
3   to perform the job duties to which she was assigned, and was performing those job duties prior to the
4   unlawful conduct alleged in this complaint.

5    28.    Alexion and DOES 1 through 25, through their acts and omissions, discriminated
6   against Warren because of her sex or gender in violation of Gov. Code § 12940(a), by engaging in the
7   course of conduct more fully set forth in the preceding paragraphs of this complaint, which included,
8   but was not limited to, terminating Warren's employment because of Warren's gender or sex.

9    29.    As a direct and proximate cause of the unlawful employment practices as stated in this
10   cause of action by Alexion and defendants DOES 1 to 25, Warren suffered damages by these
11   defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated
12   here to the extent pertinent as if set forth here in full.

### Second Cause of Action
### RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT & HOUSING ACT
### Cal. Gov. Code § 12940(h)
### Against All Defendants

As a second, separate and distinct cause of action, Warren complains against all defendants
and for a cause of action alleges:

30.    Warren re-alleges each and every allegation contained in paragraphs 1 through 29 of
this complaint as if each allegation was fully set forth herein.

31.    Government Code § 12940(h) makes it an unlawful employment practice for an
employer, "to discharge, expel, or otherwise discriminate against any person because of the person
has opposed any practices forbidden by this part. . ."

32.    Defendants retaliated against Warren by terminating her employment for the alleged
reasons for having "off label discussions" about Alexion's drugs and because allegedly Stanford had
revoked her privileges to access their medical facilities. Warren alleges that these purported reasons
for her termination were pretextual and a subterfuge to cover up Alexion's true intent to discriminate,
retaliate or terminate Warren, or all of these in violation of the rights protected by FEHA.

33.    As a direct and proximate cause of the unlawful employment practices as stated in this

- 8 -

McCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1  cause of action by Defendant Alexion and defendants DOES 1 to 25, Warren suffered damages by

2  these defendants' wrongful acts as stated in the section below entitled "DAMAGES," which is

3  incorporated here to the extent pertinent as if set forth here in full.

### Third Cause of Action
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### Against All Defendants

As a third, separate and distinct cause of action, Warren complains against all defendants and

for a cause of action alleges:

34.     Warren re-alleges each and every allegation contained in paragraphs 1 through 33 of

this complaint as if each allegation was fully set forth herein.

35.     It is a fundamental public policy of the State of California as expressed in California

Labor Code §1102.5, California Government Code §§ 12940 et seq., as well as the common law of

this State, that an employer shall not discriminate against an individual in any employment decision

on the basis of that person's sex or gender or because of that person's opposition to unlawful

employment practices prohibited by FEHA. The aforementioned termination of plaintiff was

wrongful, in that it breached the firmly established principles of public policy embodied in Labor

Code §1102.5, California Gov. Code § 12940 et seq.

36.     Alexion, and defendant DOES 1 through 25, each wrongfully and unlawfully

terminated plaintiff's employment because of her gender or sex, because of her personal relationship

with Dr. Kohrt; and because of her opposition to Alexion's unlawful employment practices

prohibited by FEHA, all in direct contravention of this State's fundamental public policy, as more

fully set forth in the preceding paragraphs of this complaint.

37.     As a direct and proximate cause of the wrongful termination as stated in this cause of

action by defendants Alexion and DOES 1 to 25, Warren suffered damages by these defendants'

wrongful acts as stated in the section below entitled "DAMAGES," which is incorporated as if set forth

here in full to the extent pertinent.

### Fourth Cause of Action
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### Against All Defendants

- 9 -

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1    As a fourth, separate and distinct cause of action, Warren complains against all defendants

2    and for a cause of action alleges:

3    38.    Warren re-alleges each and every allegation contained in paragraphs 1 through 37 of

4    this complaint as if each allegation was fully set forth herein.

5    39.    As a result of the employment relationship which existed between plaintiff and

6    defendant, the express and implied promises made in connection with that relationship, and the acts,

7    conduct and communications resulting in these implied promises, defendant promised to act in good

8    faith toward and deal fairly with plaintiff which requires, among other things, that:

9        a.  Each party in the relationship must act with good faith toward the other concerning

10           all matters related to the employment;

11       b.  Each party in the relationship must act with fairness toward the other concerning all

12           matters related to the employment;

13       c.  No party would take any action to unfairly prevent the other from obtaining the

14           benefits of the employment relationship;

15       d.  Defendant would comply with its own representations, rules, policies, procedures

16           and practices in dealing with plaintiff;

17       e.  Defendant would not terminate plaintiff's employment in an unfair manner;

18       f.  Defendant would give plaintiff's interests as much consideration as its own interest;

19           and

20       g.  The provisions of California Labor Code are implied by law into all employment

21           agreements, including the employment agreement between plaintiff and defendant.

22   40.    Defendant's termination of plaintiff was wrongful, in bad faith, unfair, and therefore a

23   violation of defendant's legal duties.

24   41.    Plaintiff further alleges that defendant breached the covenant of good faith and fair

25   dealing when it:

26       a.  Refused to abide by its own policies, procedures and practices when dealing with

27           plaintiff;

28       b.  Unfairly prevented plaintiff from obtaining the benefits of her employment

- 10 -

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1          relationship;

2              c.  Retaliated against plaintiff for protesting about defendant's illegal and unethical

3                  conduct;

4              d.  Terminated plaintiff's employment for false reasons and in a manner that was

5                  inconsistent with defendant's policies and practices; and

6          42.     Defendant's breach of the covenant of good faith and fair dealing was a substantial

7     factor in causing damage and injury to plaintiff.

8          43.     As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has

9     been injured as stated in the section below entitled "DAMAGES," which is incorporated here to the

10    extent pertinent as if set forth here in full

11                              **Fifth Cause of Action**
                               **INVASION OF PRIVACY –**
12    **VIOLATION OF ARTICLE I, SECTION I OF THE CALIFORNIA CONSTITUTION**
13                            **Against All Defendants**

14         As a fifth, separate and distinct cause of action, Warren complains against all defendants and

15    for a cause of action alleges:

16         44.     Warren re-alleges each and every allegation contained in paragraphs 1 through 43 of

17    this complaint as if each allegation was fully set forth herein.

18         45.     Plaintiff is informed and believes, and thereupon alleges that, in doing the things

19    alleged hereinabove and in this cause of action, defendants, and each of them, without Plaintiff's

20    consent, intentionally violated her right to privacy established in Article I, Section 1 of the California

21    Constitution.

22         46.     Defendants knew, or should have known, that plaintiff had a reasonable expectation of

23    privacy and that conducting an investigation of plaintiff's personal relationship with Dr. Kohrt,

24    notifying Defendant's own employees, Dr. Kohrt's employer, and, on information and belief, other

25    parties, of that relationship all constituted a violation of Plaintiff's constitutionally protected right to

26    privacy.

27         47.     Plaintiff is informed and believes, and thereupon further alleges that Defendants

28    conduct constitutes a wrongful intrusion into the private affairs of plaintiff that would be offensive

- 11 -

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1  and highly objectionable to a reasonable person, and that that the fact, nature and identity of her

2  personal relationships are not matters of legitimate public concern.

3      48.    As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has

4  been injured as stated in the section below entitled "DAMAGES," which is incorporated here to the

5  extent pertinent as if set forth here in full.

**Sixth Cause of Action**
**COMMON LAW INVASION OF PRIVACY**
**Against All Defendants**

9      As a sixth, separate and distinct cause of action, Warren complains against all defendants and

10  for a cause of action alleges:

11      49.    Warren re-alleges each and every allegation contained in paragraphs 1 through 48 of

12  this complaint as if each allegation was fully set forth herein.

13      50.    Plaintiff is informed and believes, and thereupon alleges that, in doing the things

14  alleged hereinabove and in this cause of action, defendants, and each of them, without Plaintiff's

15  consent, intentionally violated her right to privacy established under California Common Law

16  principles.

17      51.    Defendants knew, or should have known, that plaintiff had a reasonable expectation of

18  privacy and that conducting an investigation of plaintiff's personal relationship with Dr. Kohrt,

19  notifying Defendant's own employees, Dr. Kohrt's employer, and, on information and belief, other

20  parties, of that relationship all constituted a violation of Plaintiff's right to privacy under California

21  Common Law principles.

22      52.    Plaintiff is informed and believes, and thereupon further alleges that Defendants

23  conduct constitutes a wrongful intrusion into the private affairs of plaintiff that would be offensive

24  and highly objectionable to a reasonable person, and that that the fact, nature and identity of her

25  personal relationships are not matters of legitimate public concern.

26      53.    As a direct and proximate result of said wrongful conduct by Defendants, Plaintiff has

27  been injured as stated in the section below entitled "DAMAGES," which is incorporated here to the

28  extent pertinent as if set forth here in full.

- 12 -

MCCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1

2 **DAMAGES**

3     54.     For the First and Second Causes of Action, California Government Code § 12965

4 allows for the recovery of back pay, front pay, injunctive relief, compensatory damages, special

5 damages, general damages, punitive damages, costs and attorney's fees for an employee who has

6 suffered discrimination, retaliation, discharge, or failure to reinstate in violation of FEHA.

7     55.     For Causes of Action Three and Four, under California common law, an employee

8 who has been wrongfully terminated in violation of public policy may recover lost wages, profits,

9 special damages, general damages, compensatory damages, and punitive damages.

10     56.     For Causes of Action Five and Six, under California common law, a plaintiff may

11 recover lost wages, special damages, general damages, compensatory damages, and punitive damages

12 for the unlawful invasion of privacy into plaintiff's life.

13     57.     As a direct and proximate result of the conduct by defendants of which she complains,

14 Warren suffered and continues to suffer, substantial losses of earnings (past and future), retirement

15 earnings, medical and health benefits, other employee benefits and consequential compensatory

16 damages. Warren will seek leave to amend this complaint to state the amount or will proceed

17 according to proof at trial.

18     58.     Warren suffered emotional distress as a legal result of the conduct by the defendants

19 of which she complains. Warren's mental distress, suffering and anguish because of defendants'

20 conduct, included but was not limited to, reacting to her termination and defendants' other

21 misconduct with humiliation, embarrassment, anger, disappointment and worry. Warren will seek

22 leave to amend this complaint to state the amount or will proceed according to proof at trial.

23     59.     At all material times, defendants, and each of them, were in a position of power over

24 Warren, with the potential to abuse that power. Warren was in a vulnerable position because of her

25 relative lack of power, because she was emotionally vulnerable as a result of the discrimination,

26 because she had placed her trust in defendants, and because of the great disparity in bargaining power

27 between herself and her employer. Defendants were aware of Warren's vulnerability and the reasons

28 for it.

- 13 -

McCORMACK & ERLICH, LLP
150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108
TELEPHONE: (415) 296-8420

1    60.    Notwithstanding such knowledge, defendants, and each of them, acted oppressively

2   and maliciously, in willful and conscious disregard of Warren's rights, and with the intention of

3   causing or in reckless disregard of the probability of causing her injury and emotional distress. The

4   foregoing conduct of defendants, and each of them, was intentional, willful, and malicious, and

5   Warren is entitled to punitive damages in an amount to conform to proof.

6                                         **PRAYER**

7   **Wherefore**, plaintiff prays for judgment against each defendant as follows:

8    1.    For a money judgment representing compensatory damages including lost wages,

9   earnings, retirement benefits and other employee benefits, and all other sums of money, together with

10  interest on these amounts, according to proof;

11   2.    For a money judgment for mental pain and anguish and emotional distress, according

12  to proof;

13   3.    For an award of punitive damages, according to proof;

14   4.    For costs of suit;

15   5.    For prejudgment and post-judgment interest;

16   6.    For an award of appropriate attorneys' fees and costs associated with this lawsuit; and

17   7.    For any other relief that is just and proper.

18                                  **JURY TRIAL DEMAND**

19      Plaintiff demands trial by jury of all issues, except for attorneys' fees and costs.

20

21  Date:  May 23, 2014                      MCCORMACK & ERLICH, LLP

22

23                                          By: Jason M. Erlich, Esq.
                                            Attorney for Plaintiff Victoria Warren
24

25

26

27

28
                                         - 14 -

*(left margin)* MCCORMACK & ERLICH, LLP 150 POST STREET, SUITE 742, SAN FRANCISCO, CA 94108 TELEPHONE: (415) 296-8420

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jason Erlich, Esq., Cal. Bar. #203661<br>McCormack & Erlich, LLP<br>150 Post Street, Suite 742<br>San Francisco, CA 94108<br>TELEPHONE NO.: 415-296-8420   FAX NO.: 415-296-8552<br>ATTORNEY FOR *(Name):* Victoria Warren | **ENDORSED<br>FILED<br>ALAMEDA COUNTY**<br><br>MAY 27 2014<br><br>CLERK OF THE SUPERIOR COURT<br>By _____<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1221 Oak Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland CA 94612
BRANCH NAME: Administration Building

CASE NAME:   Warren v. Alexion Pharmaceuticals, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | | RG14726780 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | *(Cal. Rules of Court, rules 3.400-3.403)* |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Construction defect (10) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [x] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is   [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
  b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
  c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* Six (6)
5. This case [ ] is   [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: May 23, 2014

Jason Erlich, Esq., Cal Bar. #203661
    (TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**   Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice—
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach—Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case—Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**



## Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial.  You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055, Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o  **Court Mediation Program:** Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o   Private Mediation:  This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

•   *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial and the rules of evidence are often relaxed.  Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o   Judicial Arbitration Program (non-binding):  The judge can refer a case or the parties can agree to use judicial arbitration.  The parties select an arbitrator from a list provided by the court.  If the parties cannot agree on an arbitrator, one will be assigned by the court.  There is no fee for the arbitrator.  The arbitrator must send the decision (award of the arbitrator) to the court.  The parties have the right to reject the award and proceed to trial.

o   Private Arbitration (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated.  This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services.  Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA  94702-1612
Telephone: (510) 548-2377      Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA  94550·
Telephone: (925) 373-1035      Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA  94607
Telephone: (510) 768-3100      Website: www.cceb.org .
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

ALA ADR-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY | |
| STREET ADDRESS:<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>BRANCH NAME: | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| | CASE NUMBER: |
|---|---|
| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)<br>AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | |

**INSTRUCTIONS:** All applicable boxes must be checked, and the specified information must be provided.

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: _____. An Initial Case Management Conference is scheduled for:

   Date:                     Time:                     Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (check one):

   ☐ Court mediation        ☐ Judicial arbitration

   ☐ Private mediation      ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

ALA ADR-001

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

▷ _____

(TYPE OR PRINT NAME)                    (SIGNATURE OF DEFENDANT)

Date:

▷ _____

(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]
STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS
Cal. Rules of Court,
rule 3.221(a)(4)

# EXHIBIT B

1  NATALIE A. PIERCE, Bar No. 191342
   ANDREA R. MILANO, Bar No. 278937
2  LITTLER MENDELSON, P.C.
   650 California Street, 20th Floor
3  San Francisco, CA 94108-2693
   Telephone: (415) 433-1940
4  Facsimile: (415) 399-8490
   Email: npierce@littler.com
5       amilano@littler.com

6  Attorneys for Defendant
   ALEXION PHARMACEUTICALS, INC.
7

8

9

10

11  VICTORIA WARREN,

12           Plaintiff,

13      vs.

14  ALEXION PHARMACEUTICALS, INC.;
    and DOES 1 through 25, inclusive,
15
             Defendants.
16

**ENDORSED**
**FILED**
ALAMEDA COUNTY

JUN 1 1 2014

CLERK OF THE SUPERIOR COURT
By ___ MARISOL DIAZ
                        Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

CASE NO. RG14726780

**DEFENDANT'S ANSWER TO COMPLAINT**

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005

ANSWER TO COMPLAINT

1    Defendant ALEXION PHARMACEUTICALS, INC. answers the unverified

2  complaint filed by Plaintiff Victoria Warren ("Plaintiff") as follows:

3                              **GENERAL DENIAL**

4           Pursuant to section 431.30(d) of the California Code of Civil Procedure, Defendant

5  hereby answers the Complaint filed by Plaintiff by generally denying each and every allegation

6  contained therein, by denying that Plaintiff has been damaged or has sustained any damages as a

7  result of the conduct alleged therein, and by asserting the following separate and distinct affirmative

8  defenses.

9                           **AFFIRMATIVE DEFENSES**

10          Without waiving or excusing Plaintiff's burden of proof, or admitting that Defendant

11  has any burden of proof, as separate and distinct affirmative defenses to Plaintiff's Complaint on file

12  herein, Defendant alleges as follows:

13          **AS A FIRST, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant alleges

14  that the Complaint, and each and every cause of action contained therein, fails to state a claim upon

15  which relief can be granted.

16          **AS A SECOND, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant

17  alleges that Plaintiff's claims are barred, in whole or in part, to the extent she failed to exhaust her

18  administrative remedies.

19          **AS A THIRD, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant alleges

20  that all actions being challenged by Plaintiff were taken for legitimate, non-discriminatory, non-

21  retaliatory, and non-pretextual reasons.

22          **AS A FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant

23  alleges that each of Plaintiff's claims is barred to the extent she waived her right to recover.

24          **AS A FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant alleges

25  that Plaintiff's recovery, if any, is barred by the doctrines of laches, equitable estoppel, and/or

26  unclean hands.

27          **AS A SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant alleges

28  that each of Plaintiff's claims is barred to the extent she ratified or consented to any conduct of

ITLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005

ANSWER TO COMPLAINT

1  which she complains.

2  **AS A SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
3  alleges that each purported cause of action contained in the Complaint, or some of the causes of
4  action, are barred, or any recovery should be reduced, pursuant to the avoidable consequences
5  doctrine because Plaintiff unreasonably failed to use the preventative and corrective opportunities
6  provided to her by Defendant, and reasonable use of Defendant's procedures would have prevented
7  at least some, if not all, of the harm that Plaintiff allegedly suffered.

8  **AS AN EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
9  alleges that, to the extent that during the course of litigation it acquires any evidence of Plaintiff's
10  wrongdoing, this after-acquired evidence bars Plaintiff's claims of liability or damages or reduces
11  any claims for damages as provided by law.

12  **AS A NINTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant alleges
13  that Plaintiff knew or should have known that her claims are without reasonable basis in law and
14  equity and cannot be supported by a good faith argument for extension, modification, or reversal of
15  existing law.  Defendant is therefore entitled to recover reasonable attorneys' fees, expenses, and
16  costs incurred by and through this action.

17  **AS A TENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant alleges
18  that Plaintiff did not engage in any protected activity or protected opposition.

19  **AS AN ELEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
20  alleges that Plaintiff's conduct was not reasonable and thus not protected activity.

21  **AS A TWELFTH, SEPARATE AND AFFIRMATIVE DEFENSE,** Defendant
22  alleges that, assuming, *arguendo*, Plaintiff engaged in any protected activity (which Defendant
23  denies), Defendant would have taken the same actions regardless of any alleged protected activity.

24  **AS A THIRTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
25  alleges that Plaintiff's employment relationship with Defendant was terminable at the will of either
26  Plaintiff or Defendant pursuant to California Labor Code section 2922.

27  **AS A FOURTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE,**
28  Defendant alleges that Plaintiff failed to perform her employment obligations in conformity with

Firmwide:127300298.2 069791.1005                    2.

TLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

ANSWER TO COMPLAINT

1  applicable customs and practices, directions and policies, and statutory duties, including but not
2  limited to those duties imposed pursuant to California Labor Code sections 2854, 2856, 2857, 2858
3  and 2859.

4          **AS A FIFTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
5  alleges that assuming, *arguendo,* any protected conduct alleged by Plaintiff occurred (which
6  Defendant denies), there is no causal link between the alleged adverse employment action and the
7  alleged protected activity by Plaintiff.

8          **AS A SIXTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
9  alleges that the Complaint and each cause of action cannot be maintained because Defendant did not
10  violate any fundamental public policy.

11          **AS A SEVENTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
12  Defendant alleges that the Complaint and each cause of action cannot be maintained because
13  Plaintiff has not suffered any cognizable damage or other harm as a result of any alleged violation of
14  public policy or policy involving the public interest.

15          **AS AN EIGHTEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
16  Defendant alleges that Plaintiff did not have a reasonable, legally-protected expectation of privacy,
17  but assuming *arguendo* that Plaintiff did have a reasonable expectation of privacy, that expectation
18  was not violated by Defendant.

19          **AS A NINETEENTH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
20  alleges that Plaintiff's privacy claims are barred to the extent Plaintiff waived her right and/or
21  expectation of privacy.

22          **AS A TWENTIETH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
23  alleges that, assuming *arguendo,* Plaintiff had a reasonable privacy interest (which Defendant
24  denies), it was not "seriously invaded" by the Defendant.

25          **AS A TWENTY-FIRST, SEPARATE AND AFFIRMATIVE DEFENSE**,
26  Defendant alleges that, assuming *arguendo*, invasion of privacy is established (which Defendant
27  denies), any conduct constituting said invasion of privacy was justified by legitimate competing or
28  countervailing interests.

TLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005       3.

ANSWER TO COMPLAINT

1　　　　　　　**AS A TWENTY-SECOND, SEPARATE AND AFFIRMATIVE DEFENSE**,

2　Defendant alleges that, assuming *arguendo*, invasion of privacy is established (which Defendant

3　denies), Defendant did not have any less intrusive means to serve the competing or countervailing

4　interests that justified the invasion of Plaintiff's privacy.

5　　　　　　　**AS A TWENTY-THIRD, SEPARATE AND AFFIRMATIVE DEFENSE**,

6　Defendant alleges that, assuming *arguendo*, invasion of privacy is established (which Defendant

7　denies, any conduct constituting said invasion of privacy would not have been considered highly

8　offensive by a reasonable person.

9　　　　　　　**AS A TWENTY-FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

10　Defendant alleges that any recovery Plaintiff may be entitled to herein should be offset and/or

11　reduced by the proportionate amount of Plaintiff's negligence, fault, bad faith, breach of common

12　law duties, and violation of statutory duties, including any offset or deduction, with respect to

13　Plaintiff's claimed damages and alleged damages caused by Defendant.

14　　　　　　　**AS A TWENTY-FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

15　Defendant alleges that, to the extent the causes of action in Plaintiff's Complaint are based upon

16　comments or statements made by Defendant, such comments and statements constitute protected

17　speech under the First Amendment of the United States Constitution and Article I, Section 2, of the

18　California Constitution.

19　　　　　　　**AS A TWENTY-SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

20　Defendant alleges that, at all times, all actions taken with regard to Plaintiff, if any, were just, fair,

21　honest, in good faith, privileged, without discrimination, harassment, or retaliation, based on

22　legitimate business reasons, and based upon all relevant facts and circumstances known by

23　Defendant at the time of action.

24　　　　　　　**AS A TWENTY-SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

25　Defendant alleges that the Complaint and each cause of action set forth therein cannot be maintained

26　against Defendant to the extent that Defendant's conduct, and the conduct of Defendant's officers,

27　managers and/or employees while acting in the course of their employment with Defendant, are

28　protected by the managerial privilege in that all actions taken with respect to Plaintiff were

TLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005　　　　　4.

ANSWER TO COMPLAINT

1  undertaken and exercised with proper managerial discretion in good faith and for proper, lawful

2  reasons, and are privileged pursuant to California Civil Code section 47 *et. seq.* and made without

3  malice.

4      **AS A TWENTY-EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

5  Defendant alleges that no conduct by or attributable to Defendant was the actual or proximate cause

6  of the alleged damages, if any, suffered by Plaintiff.

7      **AS A TWENTY-NINTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

8  Defendant alleges that that any harm or damage allegedly suffered by Plaintiff was caused by her

9  own intentional or negligent acts or omissions.

10     **AS A THIRTIETH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant

11  alleges that assuming, *arguendo*, Plaintiff has suffered any emotional distress (which Defendant

12  denies), such emotional distress was proximately caused by factors other than Plaintiff's

13  employment and/or the actions of Defendant or anyone acting on Defendant's behalf.

14     **AS A THIRTY-FIRST, SEPARATE AND AFFIRMATIVE DEFENSE**,

15  Defendant alleges that, assuming, *arguendo*, Plaintiff suffered any emotional distress (which

16  Defendant denies), it was not the intent of Defendant, or any person acting on Defendant's behalf, to

17  inflict such emotional distress on Plaintiff.

18     **AS A THIRTY-SECOND, SEPARATE AND AFFIRMATIVE DEFENSE**,

19  Defendant alleges that, to the extent Plaintiff seeks recovery for her alleged emotional and/or

20  physical damages, such claims and damages are preempted by Plaintiff's exclusive remedy pursuant

21  to the California Workers' Compensation Act, California Labor Code section 3600, *et seq.*

22     **AS A THIRTY-THIRD, SEPARATE AND AFFIRMATIVE DEFENSE**,

23  Defendant alleges that Defendant did not act with malice, oppression, or fraud nor did Defendant

24  engage in any despicable acts that would warrant the imposition of punitive damages and, therefore,

25  Plaintiff's Complaint fails to state facts sufficient to support a claim for punitive damages.

26     **AS A THIRTY-FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE**,

27  Defendant alleges that Plaintiff is precluded from recovering punitive damages from Defendant,

28  either in whole or in part, under the applicable provisions of California Civil Code section 3294, or

TLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005                          5.

ANSWER TO COMPLAINT

1   such other statutes of similar effect that may be applicable.

2   **AS A THIRTY-FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
3   Defendant alleges that any violation of any statute alleged was not knowing, intentional, or willful.

4   **AS A THIRTY-SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
5   Defendant alleges that allowing for the award of punitive damages would violate the Due Process
6   Clause of the Fifth and Fourteenth Amendments to the United States Constitution and the
7   corresponding provisions of the Constitution of the State of California as well as the Equal
8   Protection Clause of the Fourteenth Amendment to the United States Constitution and the
9   corresponding provisions of the Constitution of the State of California.

10   **AS A THIRTY-SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
11   Defendant alleges that the Complaint fails to properly state a claim for costs or attorneys' fees.

12   **AS A THIRTY-EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
13   Defendant alleges that any award to Plaintiff must be reduced on the basis that Plaintiff failed and
14   refused to make reasonable efforts to mitigate, minimize, or avoid any alleged losses or damages as
15   required by law.

16   **AS A THIRTY-NINTH, SEPARATE AND AFFIRMATIVE DEFENSE**,
17   Defendant alleges that to the extent that Plaintiff failed to mitigate her damages, if any, any recovery
18   or award should be reduced accordingly.

19   **AS A FORTIETH, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
20   alleges that Plaintiff's alleged damages cannot be maintained to the extent they are speculative.

21   **AS A FORTY-FIRST, SEPARATE AND AFFIRMATIVE DEFENSE**, Defendant
22   alleges that Plaintiff is not entitled to equitable relief because adequate remedies exist at law.

23   **RESERVATION OF ADDITIONAL DEFENSES**

24   Defendant alleges that because the Complaint is couched in conclusory terms, all
25   affirmative defenses that may be applicable cannot be fully anticipated. Accordingly, the right to
26   assert additional affirmative defenses, if and to the extent that such affirmative defenses are
27   applicable, is reserved. In addition, Defendant reserves the right to amend this Answer should it
28   later discover facts demonstrating the existence of new and/or additional affirmative defenses, and/or

TLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005          6.

ANSWER TO COMPLAINT

1   should a change in the law support the inclusion of new and/or additional affirmative defenses.

2                           **PRAYER FOR RELIEF**

3           **WHEREFORE** Defendant prays that:

4           1.    The Complaint be dismissed in its entirety with prejudice;

5           2.    Plaintiff takes nothing by this action;

6           3.    Defendant be awarded its costs and attorney's fees;

7           4.    Judgment be entered in favor of Defendant; and

8           5.    Defendant be awarded such other and further relief as the Court deems just

9                 and proper.

10

11   DATED: June 11, 2014

12

13                                               NATALIE A. PIERCE
                                                 ANDREA R. MILANO
                                                 LITTLER MENDELSON, P.C.
14
                                                 Attorneys for Defendant
15                                               ALEXION PHARMACEUTICALS, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

TTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Firmwide:127300298.2 069791.1005                 7.

ANSWER TO COMPLAINT

**POS-040**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Natalie A. Pierce (SBN 191342)/Andrea Milano (SBN 278937)<br>Littler Mendelson, P.C.<br>650 California Street, 20th Floor, San Francisco, CA 94108<br>TELEPHONE NO.: (415) 433-1940  FAX NO. *(Optional):* (415) 399-8490<br>E-MAIL ADDRESS *(Optional):* amilano@littler.com<br>ATTORNEY FOR *(Name):* Alexion Pharmaceuticals, Inc., Defendant | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: VICTORIA WARREN

DEFENDANT/RESPONDENT: ALEXION PHARMACEUTICALS, INC.

| PROOF OF SERVICE—CIVIL | CASE NUMBER:<br>RG14726780 |
|---|---|
| **Check method of service** *(only one):* | |
| ☐ By Personal Service  ☑ By Mail  ☐ By Overnight Delivery | JUDGE: |
| ☐ By Messenger Service  ☐ By Fax  ☐ By Electronic Service | DEPT.: |

*(Do not use this proof of service to show service of a Summons and complaint.)*

1. At the time of service I was over 18 years of age and **not a party to this action.**

2. My residence or business address is:

   Littler Mendelson, P.C., 650 California Street, 20th Floor, San Francisco, CA 94108

3. ☐ The fax number or electronic service address from which I served the documents is *(complete if service was by fax or electronic service):*

4. On *(date):* June 11, 2014    I served the following **documents** *(specify):*

   Defendant's Answer to Complaint

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:

   a. Name of person served: Jason M. Erlich, Esq.

   b. ☑ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*

   Business or residential address where person was served:
   McCormick & Erlich, LLP, 150 Post Street, Suite 742, San Francisco, CA 94108

   c. ☐ *(Complete if service was by fax or electronic service.)*

   (1) Fax number or electronic service address where person was served:

   (2) Time of service:

   ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):* By United States Mail

   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

Page 1 of 3

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1010.6, 1011, 1013, 1013a,
2015.5; Cal. Rules of Court, rules 2.260, 2.306
www.courts.ca.gov


American LegalNet, Inc.
www.FormsWorkFlow.com

**POS-040**

| CASE NAME:<br>Victoria Warren v. Alexion Pharmaceuticals, Inc. | CASE NUMBER:<br>RG14726780 |
|---|---|

6. b. ☑ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1) ☐  deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☑  placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):* San Francisco, CA

c. ☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

f. ☐ **By electronic service.** Based on a court order or on an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in item 5.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 11, 2014

Jeff Smith
    (TYPE OR PRINT NAME OF DECLARANT)    ▶    (SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

    (NAME OF DECLARANT)    ▶    (SIGNATURE OF DECLARANT)

Page 2 of 3

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**